UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YVONNE MICHELE GIBSON,

    Plaintiff,                    Civil Action No. 17-11187

      v.                          District Judge DENISE PAGE HOOD
                                  Magistrate Judge R. STEVEN WHALEN

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Yvonne Michele Gibson ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner ("Defendant") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. The parties have filed cross-motions for summary judgment. Both motions have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment [Docket #19] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #18] be DENIED.

**PROCEDURAL HISTORY**

On April 19, 2013, Plaintiff applied for DIB and SSI, alleging disability as of June 8, 2012 (Tr. 163, 167).  Following the initial denial of benefits, Plaintiff requested an administrative hearing, held on October 8, 2014 in Oak Park, Michigan (Tr. 44).  Patricia S. McKay, Administrative Law Judge ("ALJ") presided.  Plaintiff, represented by attorney Andrew Cada, testified (Tr. 49-89), as did Vocational Expert ("VE") Judith Vandora (Tr. 89-97).  On November 26, 2014, ALJ McKay found Plaintiff not disabled (Tr. 28-40).  On May 11, 2016, the Appeals Council denied review (Tr. 4-6).  After being granted an extension of time to file suit (Tr. 1-3), Plaintiff filed a Complaint in this Court on April 14, 2017.

**BACKGROUND FACTS**

Plaintiff, born July 28, 1972, was 42 when ALJ McKay issued her decision (Tr. 40, 163).  She attended special education classes while in school but later received a high school diploma and a certification in "computer applications" (Tr. 195).  She worked previously as an assembler, home care worker, instructor in a sheltered workshop, monitor in a rehabilitation center, and snack bar attendant (Tr. 196).  She alleges disability as a result of a work-related injury, a learning disability, back problems, arthritis, and asthma (Tr. 194).

A.   **Plaintiff's Testimony**

Plaintiff offered the following testimony:

She lived with her brother in Roseville, Michigan since losing her home in St. Clair

Shores (Tr. 49). Before moving, she was required to walk a flight of stairs to her second floor condominium (Tr. 51). She stood 5' 6" and weighed 310 pounds (Tr. 50). She had lost 20 pounds between the date of her application and the hearing (Tr. 51). She learned PowerPoint and other skills during computer training (Tr. 53). Her most recent job required her to push heavy carts (Tr. 54-55). She worked in that position until becoming injured at work on June 8, 2012 (Tr. 55). She continued to work, albeit with physical difficulty, until February, 2013 (Tr. 56). She eventually received $12,500 in a Workers' Compensation settlement (Tr. 57). She used most of the settlement to pay back individuals who had bought her food after she left work (Tr. 58). She acknowledged that her physical limitations would not prevent her from doing the portion of her former job that was done in a seated position (Tr. 59-60). Prior to the most recent job, she also worked as an assembler which required her to lift up to 60 pounds, and, as a direct care worker requiring her to lift up to 100 pounds (Tr. 62-63). She also worked for Harbor Light as a monitor and at Walmart as a snack shop attendant (Tr. 63-65). Due to her back condition, she was unable to volunteer at church or in schools (Tr. 69). She did not have any income besides food stamps (Tr. 70).

    Plaintiff held a valid driver's license but only drove to doctors appointments and church (Tr. 70). She was unable to participate in the church choir due to pain (Tr. 71). She experienced sleep disturbances and was required to prepare meals in a seated position (Tr. 72). She made an attempt to help her brother with the household chores (Tr. 73). She made an effort to perform personal care tasks but sometimes went for eight or nine days without

showering (Tr. 73). She had a Facebook account (Tr. 74). Her physical problems affected her mental outlook (Tr. 74). She had not been approved for spinal surgery due to obesity (Tr. 74). She experienced difficulty grocery shopping on her own, noting that she kept her shopping time to a minimum but nonetheless required help from grocery store staff to lift her items onto the conveyer belt (Tr. 75).

In addition to degenerative disc disease, Plaintiff experienced right knee problems, hypertension, and diabetes (Tr. 76-77). While in school, she attended special education classes due to a learning disability (Tr. 76-77). She had been offered a job as a cook in the months leading up to the termination of her most recent position but turned it down due to her inability to stand for significant periods (Tr. 78-79). Although she was depressed about her physical condition, she refrained from taking psychotropic medication and instead relied on prayer (Tr. 79). She denied smoking and using alcohol or street drugs (Tr. 81). She had "thought" about getting a cane (Tr. 81). Plaintiff believed that she was unemployable due to her physical problems and the inability to read at more than a fifth grade reading level (Tr. 81). She read the Bible but did not know all of the words (Tr. 82). She was able to sit for up to 30 minutes without requiring a change of position (Tr. 83).

In response to questioning by her attorney, Plaintiff reported that she walked with a limp (Tr. 84). She reported that her best position was lying down and that she spent around seven or eight of her waking hours reclining (Tr. 85). She reported periodic incontinence (Tr. 85). She was unable to lift more than one gallon of milk (Tr. 86). She did not attempt

household chores more than once every two or three weeks and even then, required frequent breaks (Tr. 86). She reiterated that she performed food preparation chores sitting down (Tr. 87). She experienced crying jags (Tr 87). She took Norco and Flexeril for joint problems (Tr. 88). She experienced limited and temporary relief from steroid injections (Tr. 89).

  B.  **Medical Evidence**

    **1. Treating Sources**

  In June, 2012 Plaintiff sought treatment from a primary care source for severe pain after experiencing the workplace injury (Tr. 281). The records show that Plaintiff also experienced asthma requiring the use of an inhaler and hypertension (Tr. 281). A September, 2012 MRI of the lumbar spine was consistent with right lower extremity radiculopathy (Tr. 249, 299). The study showed a moderately large disc protrusion at T12-L1 causing narrowing of the neural foramen, mild to moderate stenosis at L4-L5, and a disc bulge at L5-S1 causing mild to moderate narrowing of the neural foramen (Tr. 249). An MRI of the thoracic spine showed disc protrusion at T10-T11 and T11-T12 with possible neurological abnormalities at T1-T2 (Tr. 252, 301). An MRI of the right knee showed the absence of a meniscal tear but mild cartilage irregularities with other findings "associated with impingement" (Tr. 253, 302).

  Neurological surgeon John L. Zinkel, M.D. performed a one-time examination of Plaintiff on November 7, 2012, noting Plaintiff's report of a June, 2012 workplace injury causing level "6" pain on a scale of 1 to 10 (Tr. 244). Plaintiff noted that her pain was

relieved by only sitting and reclining (Tr. 244). Dr. Zinkel observed a full range of cervical, thoracic, and lumbar spine motion and normal neurological findings (Tr. 245). He noted a disc herniatation at T12-L1 causing a "slight" displacement of the theca sac and stenosis at L4-5 and L5-S1 (Tr. 246). He found that the MRIs from the previous month did not show "dramatic radicular encroachments" (Tr. 246). He recommended non-surgical management for the back and leg symptoms, noting that she might also consider weight loss surgery (Tr. 247).

November, 2012 rehabilitation records note that Plaintiff experienced significant problems in dressing, grooming, meal preparation, housework, driving, gait, lifting, squatting, and prolonged sitting and standing (Tr. 255). Plaintiff's response to treatment was "fair," due to being "distraught over" her ongoing 60-hour work schedule (Tr. 256). December rehabilitation records note Plaintiff's report of level "5" pain and fatigue while walking (Tr. 257, 260).

On January 17, 2013, Gladstone A. Payton, D.O. issued a disability certificate, stating that Plaintiff "is to have a sit down job only definitely no excessive standing, bending, or lifting" (Tr. 274). The same day, Dr. Payton prescribed Flexeril and Ultram (Tr. 275). The following month, Dr. Payton found that Plaintiff required treatment with a back specialist (Tr. 277). In April, 2013, Dr. Payton noted the presence of ongoing back pain with nerve root impingement (Tr. 276). July, 2013 records by Dr. Shaun Jayakar note Plaintiff's report of continuing back pain, "seeing double," and dizziness (Tr. 344-346). Neurosurgeon Mark

Hornyak, M.D. examined Plaintiff, noting that imaging studies of the thoracic spine were unremarkable and studies of the lumbar spine showed only mild degenerative changes with no nerve root compression (Tr. 337).  He advised Plaintiff to make an "aggressive attempt at weight loss" and continue conservative care (Tr. 338).  The following month, orthopedic surgeon Kanwaldeep S. Sadhu, M.D., noting Plaintiff's report of continuous level "6" back pain, recommended lumbar spine injections and physical therapy (Tr. 335-336).   An October, 2013 eye exam was unremarkable except for bilateral dry eye syndrome (Tr. 332).

May, 2014 steroid injections to the right knee and back were performed without complications (Tr. 311, 316).  A June, 2014 steroid injection to the back was also performed without complications (Tr. 304).  The following month, Dr. Jayakar noted a diagnosis of lumbar stenosis (Tr. 323).  September, 2014 pain treatment records note a "marked decrease in pain" from nerve block injections performed in August, 2014  (Tr. 282, 289).

### 2.  Non-Treating Sources

On May 15, 2013, psychiatrist Zara Khademian, M.D. performed a non-examining review of the consultative and treating records on behalf of the SSA, finding that Plaintiff did not experience any degree of psychological limitation but suggested a review of Plaintiff' school records (Tr. 110).

### C.  Vocational Expert Testimony

VE Judith Pandora classified Plaintiff's past relevant work as an electronics assembler, case aide worker, and food counter clerk  as exertionally light and semiskilled;

and work as a home health aide, medium/semiskilled[1] (Tr. 92). ALJ McKay then posed the following question to the VE, describing an individual of Plaintiff's age, education, and work experience with the following limitations:

> Our hypothetical person would be the same age and have the same education and the same past work experiences [as Plaintiff]. She would, however, have the ability to perform the full range of sedentary exertional work, a seated job . . . . If we only had those limitations, would she be able to perform any of these past jobs? (Tr. 93)

The VE testified that the above limitations would preclude Plaintiff's past work but would allow for the sedentary, unskilled work of an assembler (40,000 jobs in the national economy); hand packager (68,000); and administrative support clerk (125,000) (Tr. 93-94). She found that if the hypothetical individual were also "limited in her ability to climb stairs, crouch, crawl, kneel, stoop, and bend, the job numbers would not change (Tr. 94). She testified that if the individual also needed to avoid hazards, moving machinery, unprotected heights, ladders, ropes, or scaffolding, the job numbers would not change (Tr. 94). She stated that all the jobs were "self-paced work" and that a sit/stand option would not change

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

the job numbers (Tr. 94). However, she testified that the need to be off task or move away from the work site for 20 percent of the workday, or, the need to miss work more than twice a month would preclude all employment (Tr. 95-96). She stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("DOT") and *Selected Characteristics of Occupations* ("SCO") except for the testimony regarding a sit/stand option which was based on her own professional experience (Tr. 97).

### D. The ALJ's Decision

The ALJ determined that Plaintiff continued to work from the alleged onset date of June 8, 2012 through February 6, 2013 and as such, the period properly under consideration was February 7, 2013 through the date of the decision (Tr. 30-31). Then, citing Plaintiff's medical records, ALJ McKay found the severe impairments of "degenerative disc disease and bulging discs of the thoracic and lumbar spine; cartilage irregularity of the right knee; obesity; and hypertension" but that none of the conditions met or medically equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 31-32). She found that the conditions of diabetes, blurred vision, respiratory problems, learning disability, and depression were not "severe" impairments (Tr. 32).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for sedentary work with the following additional limitations:

> [S]he is limited in the ability to climb stairs, crouch, crawl, kneel, stoop, and bend. She should avoid working around hazards, moving machinery, and unprotected heights, and should not climb ladders, ropes, or scaffolding. The claimant should have the ability to change positions between sitting and standing, and she is able to perform jobs that involve self-paced work with no production rates (Tr. 33).

Citing the VE's testimony, the ALJ found that while Plaintiff was unable to return to her past work, she could perform the jobs of assembler, hand packer, and administrative support worker (Tr. 39, 93-94).

The ALJ discounted Plaintiff's allegations of disability, citing treating records showing a full range of motion and a normal gait (Tr. 35). She cited SSA field office notes showing a normal gait (Tr. 36). She noted that Plaintiff's treatment had been exclusively conservative (Tr. 36-37). The ALJ discounted Dr. Payton's January, 2013 work restrictions, noting that while the restrictions were "illegible," they were assigned little weight due to Plaintiff's "short-term relationship" with the physician (Tr. 37). She noted that Plaintiff "only sought treatment with Dr. Payton with regard to her Workers' Compensation claim" (Tr. 37).

**STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more

than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment

listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Dr. Payton's January, 2013 Findings

In her first argument, Plaintiff faults the following finding by the ALJ:

> [Dr. Payton] provided a medical source statement opining that the claimant could return to work on January 17, 2013, but with restrictions []. While these restrictions are illegible, the undersigned affords the opinion little weight regardless, as the provider appears to have had a short-term relationship with the claimant (Tr. 37 *citing* 274).

*Plaintiff's Brief,* 11, *Docket #18,* Pg ID 413. Plaintiff contends that in the face of illegible medical records, the ALJ ought to have re-contacted Dr. Peyton for clarification, arguing that it was improper for the ALJ to accord weight to the restrictions "without even knowing what they were." *Id.* at 12 (*citing Cullin v. CSS,* 2013 WL 951068 at *8 (E.D. Mich. January 25, 2013)).

Plaintiff is correct that generally, when faced with illegible treating records, the proper remedy is to seek clarification. *Cullin,* at *8 (instead of rejecting the treating records as "'largely illegible,' it would have required little effort" on [the ALJ's] part to recontact the

treating physician to determine the basis of his opinion")(*citing Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001)("'Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry'"). In this past, the undersigned has also found that illegible treating records thwart meaningful review of the evidence by the ALJ, Appeals Council, and the courts. *Belton v. CSS*, 2011 WL 6000765, at *8 (E.D.Mich. November 4, 2011)(*citing Ozier v. Barnhart*, 2004 WL 2038540, *9 (N.D.Ill. August 11, 2004))("'[U]nreadable' progress notes 'cannot be used to' reject a claimant's allegations").

As an initial matter, the Court notes that the above-cited cases pertain to the illegible records by *treating* sources. The ALJ correctly noted that as of January 17, 2013, Dr. Peyton's opinion was based only on a one-time examination (Tr. 273-274) and was thus "entitled to no special degree of deference." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.1994)(*citing Atterberry v. Secretary of Health & Human Servs.*, 871 F.2d 567, 572 (6th Cir.1989)). However, given that the current record does not contain any other evaluation of Plaintiff's work-related abilities (treating or otherwise) heightened consideration is appropriate for Dr. Peyton's opinion.

Despite the ALJ's findings that the opinion was illegible, the undersigned was able to make out every word of the January 17, 2016 opinion:

> [Patient] is to have a sit down job only definitely *NO* excessive standing, bending, or lifting" (Tr. 274)(emphasis in original).

Although Dr. Peyton's findings take on increased significance given the lack of work-related assessments in this record, the ALJ's error does not warrant a remand. Despite the fact that she accorded "little weight" to Dr. Peyton's opinion, all of his findings are reflected in the RFC limiting Plaintiff to sedentary work (limitation to a maximum of 10 pounds sitting for six hours a day and standing/walking for two) (Tr. 33, 94); 20 C.F.R. § 404.1567(a). Consistent with Dr. Peyton's finding, the RFC also included the option of changing positions at will (Tr. 33). The VE testified that the cited jobs could be performed exclusively in either a sitting or standing position (Tr. 94). Thus, Plaintiff would be not only able to avoid excessive standing in the cited jobs but *any* standing. *Id.* The RFC also states that Plaintiff was "limited in the ability to . . . bend" (Tr. 33). Plaintiff's argument that the ALJ erroneously rejected the "disability" opinion is wholly defeated by the inclusion of *all* of Dr. Peyton's findings in the RFC. Because a remand for further fact-finding would not change the RFC or ultimate Step Five finding, the administrative findings should remain undisturbed.

### B. The Credibility Determination

Plaintiff also disputes the finding that her allegations of disability were not credible, noting that both the treating records and her professed limitations in daily activities support a disability finding. *Plaintiff's Brief* at 13.

The credibility determination, currently guided by SSR 96-7p, describes the process for evaluating symptoms.[2] As a threshold matter, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment ... that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2 (July 2, 1996). The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."[3] *Id.*

---

[2]

In March, 2016, SSR 16-3p superceded SSR 96-7p. The newer Ruling eliminates the use of the term "credibility" from SSA policy. SSR 16-3p, 2016 WL 1119029, *1 (Mar. 16, 2016). The Ruling states that "subjective symptom evaluation is not an examination of an individual's character." Instead, ALJs are directed to "more closely follow [the] regulatory language regarding symptom evaluation." See 20 C.F.R. § 404.1529(c)(3), fn 7, *below*. Nonetheless, SSR 96-7p applies to the present determination, decided on November 26, 2014. See *Combs v. CSS*, 459 F.3d 640, 642 (6th Cir. 2006)(*accord* 42 U.S.C. § 405(a))(The Social Security Act "does not generally give the SSA the power to promulgate retroactive regulations").

[3]

In addition to an analysis of the medical evidence, 20 C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

"(i) . . . daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

Under the threshold prong of the credibility determination, Plaintiff does not contest the finding that she experienced the severe conditions of degenerative disc disease and right knee problems and the non-severe impairments of diabetes, dry eyes, asthma, a learning disorder, and depression (Tr. 31-32). However, she disputes the finding that treating evidence undermined her credibility.

While Plaintiff notes that her treatment included care by a family practitioner, physical therapy, nerve blocks, steroid injections, and pain medication, the ALJ did not err in noting that exclusively conservative treatment undermined the disability claim (Tr. 36). In October, 2012, Dr. Zinkel found that surgery for either the back or knee conditions was not warranted (Tr. 247). Likewise, in July, 2013 neurological surgeon Mark Hornyak likewise recommended exclusively conservative treatment as did orthopedic surgeon Dr. Sadhu the following month (Tr. 335-337). While Plaintiff alleges that she was disabled from even sedentary work by her conditions, the lack of recommendation for aggressive treatment undermines her claim. The ALJ's summation of the treating and consultative findings constitutes an accurate summation of the record.

Plaintiff also takes issue with the finding under the second prong of the credibility determination that her activities of daily living support a finding of non-disability. *Id.* at 13-15. The ALJ discounted Plaintiff's claims that she was disabled on the basis that she was able to prepare her own meals, read the Bible, watch television, play games on her phone,

and handle her own finances[4] (Tr. 37). Plaintiff is correct that the ability to perform certain activities on a limited and sporadic basis does not by itself support a non-disability finding. *See Parks v. CSS*, 2014 WL 1305033, *10 (E.D. Mich. March 31, 2014)(claimant's ability to "talk to her friends, take care of the family pets, drive, and perform household chores ... for short periods followed by a break" failed to show non-disability)(*citing Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967)(the ability to drive, grocery shop, wash dishes and sweep floor on an intermittent basis does not equate with the "ability to engage in substantial gainful activity")).

However, substantial evidence supports the finding that Plaintiff could perform a limited range of full-time sedentary work. While Plaintiff reported that she needed to perform meal preparation in a seated position, the RFC limited her to sedentary work with the option to perform her entire work shift in a seated position (Tr. 33). Plaintiff herself testified that she would be capable of performing her most recent job provided that she could do it in a seated position (Tr. 59-60). Plaintiff's report of concentrational problems is not supported by any of the treating records or work history showing that she was able to perform semiskilled work until the time of the alleged onset of disability (Tr. 92). She testified that she kept an active Facebook account (Tr. 74). The ALJ did not err in finding that Plaintiff's

---

[4] The ALJ's finding that Plaintiff "moved in with her brother due to financial reasons and not due to her impairments and limitations" ignores the fact that Plaintiff experienced financial problems because she stopped working after allegedly becoming disabled (Tr. 37, 49, 58). Nonetheless, because the remainder of the credibility determination is well supported by the record, it should remain undisturbed.

ability to read the Bible, watch television, play games, and handle her finances undermined the allegations of limitation (Tr. 37). Because the ALJ's findings are well supported and explained, the deference regularly accorded an ALJ's credibility determination is appropriate here. *See Cruse v. CSS*, 502 F.3d 532, 542 (6th Cir. 2007) (ALJ's credibility determination entitled to deference).

In closing, my recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's current physical limitations or excellent work history and it is of no import that I might find differently if this were *de novo* review. Because the ALJ's decision was within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen, supra*.

## **CONCLUSION**

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #19] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #18] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with

specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 18, 2018

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

### CERTIFICATE OF SERVICE

I hereby certify on July 18, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on July 18, 2018.

s/Carolyn M. Ciesla
Case Manager for the
Honorable R. Steven Whalen